AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>In the matter of the search of black Apple I-Phone within<br>the custody of the Philadelphia Police Department<br>located at 400 N Broad Street Philadelphia, PA | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 25-MJ-244 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the _____ Eastern District _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §§ 5845(a)(7),5861 | Possession of a non-registered firearm (silencer) |
| (d), and 5871; 26 U.S.C.§§ | Possession of a non-registered firearm (modified barrel of less than 16 inches) |
| 5845(a)(4), 5861;18 U.S.C.922 | Engaging in the business of manufacturing or dealing in firearms without a license |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Ryan Kanyuck
*Applicant's signature*

_____
Ryan Kanyuck, Task Force Officer, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Carol Sandra Moore Wells Date: 2025.02.20 16:47:20 -05'00'

Date: _____

City and state: _____

_____
*Judge's signature*

HONORABLE CAROL SANDRA MOORE WELLS, USMJ
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania ▾

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No.  25-MJ-244 |
| In the matter of the search of black Apple I-Phone ) | |
| within the custody of the Philadelphia Police ) | |
| Department located at 400 N Broad Street Phila, PA ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Pennsylvania _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ March 3, 2025 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Duty magistrate _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Carol Sandra Moore Wells  Date: 2025.02.20 16:45:08 -05'00'

Date and time issued:  _____              _____
                                                                                      *Judge's signature*

City and state:  Philadelphia, PA                          HONORABLE CAROL SANDRA MOORE WELLS, USMJ
                                                                                      *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

**Return**

| Case No.:<br>25-MJ-244 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In the matter of the search of black Apple I-Phone within the custody of the Philadelphia Police Department located at 400 N Broad Street Philadelphia, PA | Case No. 25-MJ-244 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Ryan Kanyuck, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Narcotics Agent employed by the Pennsylvania Office of Attorney General. I am currently assigned as a federal Task Force Officer to a specialized enforcement group, the ATF Group VI Violent Crimes Task Force, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms and narcotics violations. Additionally, our task force is a High Intensity Drug Trafficking Area (HIDTA) Group, meaning we also specialize in the investigation of narcotics-related offenses of federal firearms laws, particularly criminal organizations engaged in ongoing narcotics distribution and trafficking conspiracies. I have been a sworn law enforcement officer since 2016. In 2016, I successfully completed the Philadelphia Police Academy and was initially

assigned to the West Division 19th Police District as a Patrol Officer. In 2019, I began working for the Pennsylvania Office of Attorney General as a Narcotics Agent. I began working for the ATF as a Task Force Officer in 2021. I have successfully completed the course in the implementation of the NIK Polytesting Narcotics Identification and Screening System, required to conduct and identify various controlled substances. In addition, I have participated in electronic surveillance investigations in the City and County of Philadelphia and surrounding counties while employed by the Office of the Attorney General of Pennsylvania. Throughout my career, I have testified in Philadelphia County, and surrounding counties. I have testified in Federal, Municipal Court, Magisterial District Courts and in the Court of Common Pleas as a witness in narcotics and firearms investigations.

3.      During my tenure as a law enforcement officer, I have participated in the execution of hundreds of search and seizure warrants, resulting in the seizure of large quantities of controlled substances (cocaine, "crack", heroin, methamphetamine, marijuana, ecstasy, etc.), packaging implements and other paraphernalia involved in the distribution of controlled substances, and the ordering, purchasing and distribution of controlled substances.

4.      As part of my current assignment with ATF Group VI, I am tasked with the investigation of violations of both state and federal statutes, which include commercial robberies, illegal possession of firearms, kidnappings, home invasions, and drug offenses. I have experience and have participated in various types of investigative activities, including, but not limited to: physical surveillance; the debriefing of defendants, witnesses, informants, and other individuals who had knowledge of firearms, controlled substance violations, and other crimes; the execution of search warrants; the consensual monitoring and recording of conversations; electronic

surveillance through the use of pen registers and trap and trace devices; GPS tracking devices; controlled purchasing of narcotics and firearms, and the handling and maintenance of evidence.

5.      I am familiar with investigations involving the possession of weapons described in the National Firearms Act (NFA), specifically weapons such as machineguns in the form of machinegun conversion devices often called "switches" or "chips," and the illegal manufacturing of privately made firearms, often referred to as "ghost" guns, which are typically not serialized. I am also familiar with some of the tools used in furtherance of illegal firearm manufacturing. I am also familiar with the digital evidence often found in electronic devices such as laptops and cellular devices. Further, I am familiar with criminal investigations pertaining to the controlled purchases of serialized firearms, privately made firearms such as "ghost" guns, suppressors, also known as "silencers," and NFA weapons, including machinegun conversation devices.

6.      I am aware that possessors or traffickers of illegal firearms commonly maintain their firearms for long periods of time because firearms are valuable commodities and may be used for protection. Possessors or traffickers of illegal firearms commonly conceal contraband, firearms, and tools of the trade and records of transactions where they have ready access to them, such as inside their residences, vehicles, and businesses and may commonly maintain them inside combination or safes, storage lockers, safety deposit boxes, garages, and other types of locked or closed areas, for ready access and to conceal them from law enforcement. Possessors/traffickers of illegal firearms may commonly maintain documentation pertaining to the firearms, including but not limited to, invoices, transfer paperwork, books, ledgers, receipts, notes, and other papers relating to the manufacture, transportation, possession, and distribution of illegal firearms and possibly the profits derived from those transactions. Traffickers also commonly will take and keep photographs of illegal firearms, ammunition and other contraband

in their possession. All of the items mentioned above may be kept in a digital format on their computers and/or cellular phones, on their person, and/or in vehicles and residences.

7.      Your Affiant has completed the necessary training administered by the Pennsylvania State Police and is certified to conduct electronic surveillance pursuant to the Wiretapping and Electronic Surveillance Act. Your Affiant's certification number is A-6144.  Your Affiant has prepared Affidavits in support of Court Orders to obtain pen registers and trap and trace devices, disclosure of mobile communications tracking information and the use of a telecommunication identification interception device.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

9.      The property to be searched is a black Apple iPhone (hereinafter the "Device") and cellphone extraction.  The Device is currently in the custody of the Philadelphia Police Department.

10.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

11.    On February 27, 2024, at approximately 4:20PM, M.P.[1] walked into the

Philadelphia Police Department's 7th District Headquarters to report that he was shot on

Saturday, February 24, 2024, at approximately 11:00PM, at 408 Densmore Road. M.P. was

observed to have a gunshot wound through his left leg into his right leg. Philadelphia Police

transported M.P. to Jefferson-Torresdale Hospital.

12.    Members of the Philadelphia Police Department's Shooting Investigation Group

(SIG) responded to Jefferson-Torresdale Hospital to interview M.P. with the assistance of a

Russian translator.

13.    Detectives obtained additional information from M.P. during a second interview

conducted on March 1, 2024. In summary, M.P. stated that he had a verbal altercation with his

girlfriend, A.N., on Saturday February 24, 2024. M.P. further stated that A.N. later left with their

child and went to 408 Densmore Road to stay with the offender, Vyacheslav Zlatkovskiy (DOB

10-27-67). That evening, M.P. went to Zlatkovskiy's residence several times. M.P. knocked on

the door and rang the doorbell, but there was no response. M.P. saw his child, so he knew A.N.

was present inside of Zlatkovskiy's home. M.P. told detectives that later Zlatkovskiy called him

on his cell phone from cell phone number 215-713-5555. After a brief argument, Zlatkovskiy

told M.P. to come back to his residence. M.P. returned to 408 Densmore Road and knocked on

the basement door. Zlatkovskiy opened the basement door and shot M.P. in the left leg. M.P.

---

[1] M.P. is a person who is known to law enforcement and has been interviewed in connection with this investigation. M.P. provided information as a victim/witness to a crime and not in anticipation of receiving financial compensation or prosecutorial or judicial consideration in connection with any criminal matter. The information provided by M.P. is believed to truthful and credible as aspects have been corroborated by this investigation.

disclosed to police that he was scared to report the incident and thought the injury was not that serious so he returned home.

14.     M.P. further disclosed to police that after he returned home, he received a text message from Zlatkovskiy which stated, "If you call her again, this is what you get." M.P. also told investigators that Zlatkovskiy has a video of the shooting on his cellphone and has been showing it to his friends.

15.     M.P. stated he has known Zlatkovskiy for years. Investigators showed M.P. a single photo of Zlatkovskiy, which he positively identified as the male who shot him in the leg.

**Search and Seizure warrant execution**

16.     On February 28, 2024, at approximately 6:10 am, members of the Shooting Investigation Group, with the assistance of SWAT, executed Search Warrant # 24-002147 at 408 Densmore Road. Zlatkovskiy was located inside the residence. During the search, the following firearms were recovered from the property: a black Sig Saur P365 (Serial #66B982471 ), a Polymer 80 handgun, a Mossberg 12 gauge shotgun, (Serial #V1511098), a IWI GAUL .556 rifle (Serial #G20112160), a brown and black Marlin Model 30/30 rifle, a TOKAREZ semi-auto shotgun (Serial #52-H22yD-011032), and a modified O.F. Mossberg & Sons, model 702 Plinkster .22 caliber semiautomatic firearm, with no serial number, blue tape on the grip, and a black suppressor screwed onto the barrel.

17.     In addition, numerous rounds of ammunition, a rifle bag, U.S. Mail, the offender's black Apple iPhone cellphone ("the Device"), and the offender's DVR system were all recovered by investigators. Members of the Bomb Disposal Unit, S810, responded and recovered one M-100 and one commercial firework from inside the residence. Your Affiant along with members of the ATF Task Force were also contacted and responded to the residence. Your Affiant along

with members of the ATF recovered, from inside a shed in the backyard, several homemade suppressor devices (commonly referred to as a firearm silencer), a laptop, and equipment which appeared was being used to manufacture firearm arm accessories.

18.     All recovered firearms were preserved and swabbed for DNA evidence. SIG Detectives conducted ATF Firearms traces for each firearm, placed the firearms on property receipts and submitted these items to Criminalistics Lab and Firearms Identification Unit (FIU) for processing.

**Firearm accessories/manufacturing firearm accessories**

19.     On February 28, 2024, your affiant, along with other members of ATF observed and recovered suppressor/silencers and other firearm manufacturing equipment from a shed located in the rear of 408 Densmore Road, including:

a.     (1) Polymer80 box containing (2) red milling kits



b.  blue plastic drawer, numerous small metal objects, (1) digital caliper, (1) bottle

unknown fluid, (6) metal tools.



c.  Multiple firearm silencers with no manufacturer's markings or identification or

serial numbers.



d.  Craftsman drill press with metal shavings



## ATF Firearm and Ammunition Technology Division (FATD) examination report

20.    On June 27, 2024 (initial) and July 3, 2024 (amended), ATF Taskforce Detective Richard Antonini received an examination report from ATF's Firearms and Ammunition Technology Division Firearms Enforcement Officer Andrew Griffith pertaining to the evidence from 408 Densmore Road.  Upon examination, Griffith concluded that the evidence met the definition of "firearm silencers" or "firearm mufflers" as defined by federal statute[2].  His report also noted that "all exhibits bear no manufacturer's markings of identification or serial number as required by 26 U.S.C. § 5842."

---

[2] Title 18, United States Code Section 921(a)(25) states that "the terms 'firearm silencer' and 'firearm muffler' mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

21.     Firearms Enforcement Officer Griffith later examined the modified O.F. Mossberg & Sons, model 702 Plinkster .22LR caliber semiautomatic firearm with no serial number with an attached cylindrical device with no manufacturers' markings or serial number. Griffith determined that "a portion of the original shoulder stock has been removed leaving only a pistol-type grip."  Also, "a portion of the barrel was removed from the muzzle end… As modified, this firearm is no longer designed to be fired from the shoulder and utilizes a barrel length less than 18 inches." Griffith determined that evidence meets the definition of "firearm" as defined in Title 26 United States Code § 5845(a)(4).  Griffith further reported that this firearm had its serial number obliterated.  Additionally, Griffith examined the cylindrical device that had been attached to the firearm and determined that it met the federal definition of "firearm silencer" or "firearm muffler."

22.     ATF Task Force Officer (TFO) Richard Antonini obtained certificates from ATF showing that the suppressors and modified rifle in the defendant's possession were not registered to him in the National Firearms Registration and Transfer Record (NFRTR) as is required for them to be lawfully possessed by an individual.  TFO Antonini also obtained records showing that Zlatkovskiy does not have a federal firearms license.

23.     On September 12, 2024, a grand jury issued an indictment charging Vyacheslav Zlatkovskiy with violating Title 26, United States Code, Sections 5845(a)(7), 5861(d), and 5871 (possession of a non-registered firearm (silencer)), and Title 26, United States Code, Sections 5845(a)(4), (c), 5861(d), and 5871 (possession of a non-registered firearm - modified with a barrel of less than 16 inches in length).

**Pennsylvania Search and Seizure Warrant**

24.    During the course of the investigation, Philadelphia Shooting Investigation Group (SIG) Detectives Ralph Latchum and Justin Falcone obtained a Pennsylvania search and seizure warrant (#24-002262) on March 5, 2024, for the contents of the Zlatkovskiy's Apple iPhone. Following the issuance of this warrant, investigators later produced a phone extraction for Zlatkovskiy's device. The probable cause for this search warrant was primarily focused on the shooting investigation.  However, in addition to the evidence supporting Pennsylvania charges of aggravated assault and related offenses, there is also probable cause to believe that Zlatkovskiy is engaged in manufacturing, altering, and potential distribution of firearms and firearms accessories in violation of federal law.  Your Affiant, along with ATF agents, recovered multiple silencers, tools, and components used to manufacture silencers inside the shed located at 408 Densmore Road.  Additionally, inside the shed, your Affiant observed a box which contained a silencer and multiple components utilized to make silencers.  These items were located next to a drill press with metal shavings.  The manner in which these various items were observed and recovered indicates to me, based on my training and experience, that the shed area was likely a manufacturing workshop/work area that was used by Zlatkovskiy to make personally manufactured firearms and silencers. The tools, machining liquid, and metal shavings are indicative to me of metal workmanship and the presence of a privately manufactured firearm and homemade firearm accessories, without serialized numbers, indicates that they were likely made within the work area. Your Affiant knows, individuals who manufacture firearms and silencers, often utilize the internet to procure these parts and tools used to manufacture the items.  Your Affiant knows that people who illegally manufacture firearms and silencers, often sell them for profit, often through the internet or through the use of electronic devices and communication

applications. In my training and experience firearms manufacturers will sell their items for profit and will obtain payment in cash as well as through various payment platforms and money transfer applications that are commonly used through cellular telephones and in online platforms. In addition, I am aware that manufacturers of firearms and firearm accessories often will take photographs and/or videos of their items in an effort to advertise and sell them. Additionally, your Affiant knows people who traffic illegal firearms and silencers utilize cellular telephones to call, text message, are to meet with, and share photos with, potential buyers. Based on my training and experience individuals who are engaged in manufacturing firearms and firearm accessories often engage in planning and long-running efforts to obtain the necessary tools, equipment, components and plans needed to correctly manufacture the items. I believe, based on the sophistication of the work area Zlatkovskiy had established that he had been engaged in the effort to manufacture for some time prior to the execution of the warrant. Therefore, I seek permission to search for evidence of these efforts for a period of 6 months prior to the warrant which may uncover his efforts to search for information, order parts and materials, contact customers and receive payments for the items observed in his home work-area.

25.    Based on the facts set forth in this affidavit, there is probable cause to believe that Vyacheslav Zlatkovskiy also committed violations of 18 U.S.C. § 922 (a)(1)(A), engaging in the business of importing, manufacturing, or dealing in firearms without a license. There is probable cause to search the information described in Attachment A, for evidence of this crime as further described in Attachment B.

26.    The Device is currently in storage with the Philadelphia Police Shooting Investigation Group. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the

same state as they were when the Device first came into the possession of the Philadelphia Police Department.

## **TECHNICAL TERMS**

27.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of

four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).
Every computer attached to the Internet computer must be assigned an IP address
so that Internet traffic sent from and directed to that computer may be directed
properly from its source to its destination.  Most Internet service providers control
a range of IP addresses.  Some computers have static—that is, long-term—IP
addresses, while other computers have dynamic—that is, frequently changed—IP
addresses.

c.  Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other.  Due to the structure of the Internet,
connections between devices on the Internet often cross state and international
borders, even when the devices communicating with each other are in the same
state.

28.    Based on my training and experience, I know that individuals involved in criminal
activity commonly utilize their cellular telephones to communicate with co-conspirators or
associates to facilitate, plan, and execute crimes.  For example, I know that individuals engaged
in criminal activity often store contacts lists, address books, calendars, photographs, videos,
audio files, text messages, call logs, created notes, voice mails in their electronic devices, such as
cellular telephones, to be used in furtherance of their criminal activities.

29.    Specifically, I know that those involved in criminal activity can communicate
with associates or co-conspirators using cellular telephones to make telephone calls.  If they are
unable to reach the party called, they can leave voice mail messages. I am aware that Apple-
based and Android-based phones download voice mail messages and store them on the phone
itself so that there is no need for the user to call in to a number at a remote location and listen to

the message. In addition, I know those individuals who participate in criminal activity can communicate with associates or co-conspirators using cellular telephones to send e-mails and text messages and communicate via social media networking sites such as Instagram or messaging application such as Whatsapp. By analyzing call and text communications, I may be able to determine the identity of co-conspirators and associated telephone numbers.

30.    Furthermore, cellular telephones also contain address books with names, addresses, photographs, and phone numbers of a person's regular contacts.  I am aware that individuals who participate in criminal activity frequently list associates or co-conspirators in directories, often by nickname or to avoid detection by others.  Such directories as the ones likely contained in the subject cellular telephone, are one of the few ways to verify the numbers (i.e., telephones, pagers, etc.) being used by co-conspirators or associates.

31.    In addition, I know that those involved with individuals who participate in criminal activity such as the illegal possession of firearms, often take photographs or make videos of themselves and their associates and retain them on their electronic devices such as cellular telephones.  This evidence would show associations between accomplices, i.e., photographs of accomplices and/or individuals common to co-conspirators.  I am also aware that individuals who participate in criminal activity such as the illegal possession of a firearm often take photographs or make videos of firearms with their cellular telephones.   Based on my training and experience, those who commit these crimes often store these items on their phones in order to show to associates, and/or to upload to social media at a later date.

32.    Furthermore, based on my training and experience and the training and experience of other agents and Task Force Officers, I know that individuals who participate in criminal activity often use a cellular phone's Internet browser for web browsing activity related

to their activities.  I know that individuals who participate in criminal activity also use their cellular telephones' Internet browser to update their social networking sites in order to communicate with co-conspirators or associates, and to display firearms and/or other items, or to post photographs of locations where they have traveled in furtherance of their activities.

33.    In addition, individuals who participate in criminal activity sometimes use cellular telephones as navigation devices, obtaining maps and directions to various locations in furtherance of their activities.  These electronic devices may also contain GPS navigation capabilities and related stored information that could identify where these devices were located.

34.    Furthermore, based on my training and experience, forensic evidence recovered from the review of a cellular telephone can also assist in establishing the identity of the user of the device, how the device was used, the purpose of its use, and when it was used.  In particular, I am aware that cellular telephones are all identifiable by unique numbers on each phone, including: serial numbers, international mobile equipment identification numbers (IMEI) and/or electronic serial numbers (ESN).  The search of each phone helps determine the telephone number assigned to each device, thus facilitating the identification of the phone as being used by individuals engaged in criminal activity.  In addition, I am aware that by using forensic tools, information/data that users have deleted may still be able to be recovered from the device.

35.    Searching for the evidence described in Attachment B may require a range of data analysis techniques.  In some cases, Agents, taskforce officers, computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be co-mingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words,

attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the ATF intends to use whatever data analysis techniques appear necessary to locate and retrieve the potential evidence described in Attachment B.

36.     Your Affiant therefore believes and asserts that a search of the electronic files and memory of the Device may yield evidence of violations of federal laws, including, but not limited to, disclosing the identities of persons involved in the commission of these offenses.

37.     Therefore, based on the information, facts and circumstances stated above, your Affiant believes that the Device could provide investigators with additional information related to the investigation Vyacheslav Zlatkovskiy. Accordingly, I respectfully request that the Court issue a warrant that includes permission to search the Device for the information sought in attachment B utilizing methods outlined in the affidavit.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

38.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

40.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

41.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/Ryan Kanyuck

_____

Ryan Kanyuck
Taskforce Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Subscribed and sworn to me telephonically
on February 20, 2025:

Carol Sandra Moore Wells  Date: 2025.02.20 16:46:05 -05'00'
_____
HONORABLE CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The Apple iPhone within the custody of the Philadelphia Police Department and associated with Vyacheslav Zlatkovskiy (SUBJECT PHONE) and the storage drive, containing extraction or download of the SUBJECT PHONE, provided by Philadelphia Police Department to Affiant.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 26, United States Code, Sections 5845(a)(7), 5861(d), and 5871 (possession of a non-registered firearm (silencer), and Title 26, United States Code, Sections 5845(a)(4), (c), 5861(d), and 5871 (possession of a non-registered firearm - modified with a barrel of less than 16 inches in length), as well as violations of Title 18, United State Code, Section 922 (a)(1)(A), (engaging in the business of importing, manufacturing, or dealing in firearms without a license) and involve Vyacheslav Zlatkovskiy from August 28, 2024 through February 28, 2024, including:

   a.   Records, to include videos, photos, images, messages, notes, e-mails, messaging applications, data, metadata, web search and other browser data, relating to firearms and ammunition and the acquisition of such items.

   b.   Electronic communications relating to the firearms, ammunition, and firearms accessories,

   c.   Evidence indicating the device owner's state of mind as it relates to the crime(s) under investigation.

   d.   Telephone or address directory entries consisting of names, addresses, telephone numbers; logs of telephone numbers dialed, telephone numbers of incoming, outgoing or missed calls, text/picture messages, schedule entries, stored memoranda, videos, social networking sites and digital photographs pertaining to the crime(s) under investigation,

   e.   Any information related to sources, sale, or transfer of firearms, including names, addresses phone numbers, and any other identifying information,

f.  Any information recording domestic and international schedule or travel related to the described criminal activity, including any information recording a nexus to airport facilities, airport security, or airlines,

g.  All bank records, checks, credit cards, credit card bills, account information, and other financial records relating to the illegal creation, acquisition, or distribution of firearms,

h.  Any information related to package delivery services, including but not limited to United States Postal Service, Federal Express and UPS related to the offenses under investigation,

i.  All data that has been manually programmed into a GPS navigation system, as well as data automatically stored by the GPS navigation system,

j.  Records of or information about Internet Protocol addresses used by the device.

k.  All documents, to include in electronic form, and stored communications including contact information, text messages, call logs, voicemails, Internet searches, and any other electronic data or other memory features contained in the device described in Attachment "A" and SIM cards including correspondence, records, opened or unopened e-mails, text messages, and Internet history, pertaining to the offenses under investigation.

l.  Records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "Favorite" web pages, search terms that the user entered into any Internet search engine, and records or user-typed web addresses, as well as evidence of the posting of videos, photos, or any material relevant to these crime to any social networking site.

m.  During the course of the search, photographs of the Device may also be taken to record the condition thereof and/or the location of items therein.

n.  Evidence and contents of logs and files on the item described in Attachment "A," such as those generated by the computer's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Also, any malware resident on the computer/phone or device.

o.  Any information pertaining to the creation, acquisition, possession, purchase or distribution of the illegal firearm(s) that was transmitted, stored, or received using the applications or means described in paragraphs above.

p.  Evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software,

q.  Evidence of the attachment of other devices,

r.  Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device,

s.  Passwords, encryption keys, and other access devices that may be necessary to access any of the devices,

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.